Good morning, Your Honors, and may it please the Court. I'm Joseph Wiseman, counsel for appellant in this matter. Your Honors, this case addresses the issue of, as the Court knows, of multiplicity with respect to the counts of conviction. Mr. Munguia, who went to trial with several co-defendants, was convicted after a jury trial. And the issue here that we raise on appeal is under a 2255 standard as to whether or not the counts 1 and counts 2 were multiplicitous. And the failure of Mr. my client's trial counsel to raise that issue before the district court judge, in my view, is ineffective under the Strickland standard. As this Court knows, the methodology of interpreting or deciding whether or not there is multiplicity in a particular indictment is under Guzman. And Guzman has those five factors that this Court has articulated to make the analysis. And in this particular case, in going through the Guzman standards, I believe that the district court erred by – well, the trial counsel erred by not raising this issue. And then on a 2255, when the district court affirmed the magistrate's decision that there was not a multiplicity issue here, I think it was an error. In particular, if one goes through the Guzman factors in this particular case, the evidence that was presented at trial – and by the way, I misspoke earlier. I'd like to reserve two minutes of my time. Thank you. If one goes through the Guzman factors, the five factors, applying those factors to what occurred in the case below, there was really no difference in the period of time of the two conspiracies. If the Court knows, as briefed, the appellant's position is that really there was only one overarching conspiracy, and that was to possess or actually to manufacture the methamphetamine. And the acquisition of the methamphetamine was prior to the acquisition of the precursor chemicals, wasn't it? I think that's a correct assessment of what happened, Your Honor. But it's not really an identity of time. It seems to me that the facts in the trial court were such that the time of the agreement to manufacture and the time that the defendants acquired the 1 million tablets by Mr. Vell were really temporally quite close. I think it was just one day apart. Okay. But it wasn't identical. It was they had an agreement on one day, hey, let's go manufacture some methamphetamine. And another day they acquired precursor chemicals. That's exactly correct. Our view, however, is that it really was one overarching scheme here, and that was to manufacture this illegal drug. And they couldn't do it without the possession of the ---- Well, they may have had several conspiracies, but do I understand also that the methamphetamine was to have been manufactured someplace near Modesto? That is correct. The methamphetamine was the idea was to manufacture the methamphetamine at a different location than where it was purchased, where the precursor chemicals were. And the precursor chemicals were at a motel someplace. In South Sacramento. That's correct. I'm thinking out loud here we have both not exact identity in time, not exact identity in location. That is true. We don't have an exact identity, but my view is that if you look at the facts that was developed in the trial court, that really it was only one concept there, which was to manufacture the methamphetamine. And because there's a ---- I think it was May 9th and May 10th when the two operative events occurred, our view is it really is one overarching conspiracy, and the Court should have, at least it should have been addressed, and we believe that the ruling on habeas was incorrect. Why couldn't we conclude that the agreement to manufacture methamphetamine at Modesto was one separate event, and then when they took possession of precursor chemicals on another day at another location, that's a separate event? I think that in looking at what happened in this case, if there was really a substantial difference in the players, in other words, you had the conspiracy to manufacture involving, let's say, three of the numerous defendants, and then the conspiracy to acquire was with other defendants, I think that would be a stronger argument. But really, all of the participants in this crime did the same thing. They were all together, albeit, as Your Honor notes, that the concept of manufacturing, the decision to manufacture, where to manufacture, was at a different location than where the precursor chemicals were purchased. But nevertheless, if one looks at, again, as the totality of the defendants, it was really all of them together deciding the ultimate goal was to manufacture this illicit drug. Obviously, they had to get the precursor chemicals to do that, and Mr. Valle attempted to do it at the motel in South San Francisco. Counsel, I have a different question, and maybe I could interject it if you would permit me. My question is how we decide that counsel's performance fell below an objective standard if none of the lawyers for any of the co-defendants raised this issue at trial. Your Honor, I don't believe that the fact that no other defense lawyer raised the issue cuts against the argument that in this particular case my client's counsel, who obviously, as the Court knows, has an obligation to his client, the failure of my client's defense counsel to raise that, I believe, goes below the strictest standard. Certainly, if I may hone in on the question Your Honor asked, what is really the prejudice? Well, the government's position is really there is no prejudice. Even if it's not. Well, that wasn't my question. Sorry, but just for the sake of clear communication, my question is how do we decide that this error that you're asking us to find fell below the objective standard or reasonable to say none of the lawyers present raised it? I don't have a problem with prejudice. I think we have Ninth Circuit case law on that point. Well, that's a bit of a difficult question, because if the – if Your Honor is asking the question, how do we know that it was below an objective standard if no other lawyers raised that issue? That's the question. I'm not sure if that's really the standard that the Court should imply. I mean, if there was an error and if five or six defense lawyers failed to raise it, I don't think simply because the cohort of lawyers failed to identify and raise that issue, that that necessarily means looking at it under the strictest standard that it falls below an objective standard. It's quite possible that five lawyers in one case can make the mistake. So perhaps you're arguing that all of them were wrong. All of them fell below the objective standard of reasonableness. They all made the same mistake. Is that right? I think in this particular case, although I represent one defendant, I think an argument can be made that the totality of the lawyers in this case failed to raise this issue and that perhaps our argument was wrong. Counsel, Judge Gould. Mr. Weisman, Judge Gould had a question. I'd like to clarify something in my thinking, if you've completed your answer to Judge Kristen. Well, here's what it is. If this were a state prisoner habeas case under 2254, I guess there would be double deference. First, there would be the normal deference that we give a lawyer's strategic decisions under Strickland. Second, there would be the AEDPA deference, which requires that the decision of the state court be objectively unreasonable. So we'd have to say the state court was objectively unreasonable in deciding that the lawyers' tactics were okay. But here this is at 2255, right? It's a Federal proceeding? That is correct, Your Honor. Am I right? Yes, that is correct. So we don't have the AEDPA deference, as I understand it. We just have the one level of deference to a, under Strickland, to a lawyer's strategic role. Do I have that right? Your Honor, I would agree with you that because we are not in a 2255 or, excuse me, 2254 situation, that the Court does not have to do that two-step deference. Under the 2255 standard, this Court would review the district court's denial of the Federal habeas under a de novo standard. So that would be the standard that this Court would apply. Does it have to be? Do we have case law that would say that there has to be an objectively unreasonable decision by the counsel in a 2255? Or is it something different? Your Honor, my understanding of the law in 2255 is that this Court would have to make the decision based upon an objectively reasonable standard. But obviously, because it's 2255 as opposed to 2254, there's not that deference that would be required if it were a State habeas proceeding. Okay. Thanks. That clarifies my question. I appreciate it. And I just wanted to clarify something in my own mind, too. Do I understand correctly that manufacturing methamphetamine or, let me put it this way, possession of precursor chemicals with the intent to manufacture methamphetamine is not a lesser-included offense of manufacturing? Under the statute, it would not be, Your Honor. It would not be a lesser- Is it possible to commit both crimes independently? It is possible. But again, I'm arguing that in this particular case, albeit they are separate statutes, if one looks at what happened, looks at the facts that were developed at the trial court level, it really was one conspiracy charged in two separate counts that the government, the government addressed in the indictment. And if I may just briefly rephrase that. You're over your time, but do you want to complete your thought? I was just simply going to say, with respect to prejudice, albeit the government takes the position the sentence would have been the same because, under Count I, it was a 10-year mandatory minimum, and the 5-year enhancement under, I believe, Count V. My client does have, in my view, a conviction that should not be there. And there are collateral consequences to that, albeit one could argue that the ultimate sentence would not have, would have not changed. But unless the Court has any further questions, I'll just defer to my colleague. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Phil Talbert for the United States. The defendant was not denied effective assistance to counsel for two reasons. Let me start with the Strickland performance prong. Here it was reasonable for counsel not to challenge the two conspiracy counts on multiplicity grounds. And even if the two, because the counts were not multiplicitous, and even if they were, the issue was a very close one. Here the objectives of the two conspiracies were different. Taking Count II first, the conspiracy to possess the listed chemical, here the conspiracy was, the agreement was for the parties to obtain these million pseudoephedrine pills from Sal Robles, the sheriff detective who was operating in an undercover capacity unknown to the defendants, on May 10, 2002, in a ripoff scheme. One of the key facts here is that the defendants negotiated, Manuel Valle and Lino Hernandez, negotiated on May 9th, the day before the transaction, with Sal Robles to obtain a million pseudoephedrine pills for $204,000. In fact, the next day when they delivered the backpack containing the money, it was a ripoff. They only delivered $4,000. The other members of the scheme, at least the ones who made post-arrest statements, knew that, and they pursued a defense at trial, the ones who were visible as participating in the transaction. They pursued a defense at trial that this was just a ripoff, this was just Manuel Valle's plan to steal pseudoephedrine pills from Sal Robles and take off with them. The conspiracy charged in Count 1 was broader. That one was the conspiracy to manufacture. The evidence presented at trial was that the location for that manufacture would have been on a ranch outside of Modesto. That's according to the statements of Lino Hernandez and Manuel Valle on May 9th during the negotiations of the transaction with Sal Robles, where they mentioned that's where they do their business, they have this ranch outside of Modesto, and the agents interpreted that as meaning that's where they planned to manufacture the methamphetamine. In fact, when they obtained the pseudoephedrine on May 10th, all of the defendants left the transaction and traveled from Sacramento northward rather than southward toward Modesto, which is where the agents thought they would be going. So while the defendant's position on this appeal is that there's just one stream of events here, it really is a different set of locations and arguably times, too, that are involved in the two conspiracies. The conspiracy in Count 2 is very focused on obtaining the pseudoephedrine pills on May 10th. The conspiracy charged in Count 1 is the larger conspiracy to manufacture methamphetamine. Now, the difference between this case and Montgomery, which I argue believe this case is most similar to because there are two different goals and there are different statutory subsections charged, the difference is in Montgomery the government had a cooperating witness who was a member of the conspiracy and could fill in the details at trial as to each of the conspiracy's goals and what the roles of the various conspirators would play in the conspiracies. Here we didn't have that. So the evidence presented at trial, which under Montgomery and Guzman this court looks at to decide in the five-factor test whether these are one overall agreement or really two separate agreements, here the events all are a fairly short period of time and they focus mainly on the obtaining of the pseudoephedrine pills. But there was evidence presented at trial, and this court earlier found on direct appeal there was sufficient evidence to support the jury's verdict on this, that there was a plan to manufacture methamphetamine that all of these defendants engaged in. The evidence of that was, again, it was the statements made during the negotiation about the plan to manufacture methamphetamine. There was a drug expert who testified about the manufacture of methamphetamine, the use of pseudoephedrine pills to do so, and the implications of having a million pseudoephedrine pills as opposed to a small amount. Those were, and then the post-arrest statements of the two defendants who gave interviews after their arrest indicating the agreements with Manuel Valle. Now, the post-arrest statements, those defendants were trying to push a theory, a defense theory that they were just stealing pseudoephedrine pills that really had nothing to do with manufacturing methamphetamine. But they did indicate the defendants acting in concert together in that plan. So those were the facts that were presented at trial. Now, even if this Court were to determine on review that this was not, that these two counts were multiplicitous, that decision was still a very close one, and it depends on a weighing of five factors that this Court set out in Guzman and Montgomery and similar cases. The evidence has to be taken in the light favorable to the government. And it's the defendant's burden to show multiplicity. So when weighing whether it is reasonable to bring or whether it was unreasonable not to have brought this argument, this Court should keep in mind that those were the constraints faced by the defense counsel at the time. And as Your Honor pointed out, there were six defense counsel in this case. None of them raised this issue. Well, if they're all asleep at the switch, I mean, that's Mr. Weissman's point. Let me ask you a question, just theoretically. Is it possible to manufacture methamphetamine without possessing the listed chemicals? It would be no. Methamphetamine needs at least some precursor chemicals, whether it's pseudoephedrine, whether it's ephedrine, whether there's some other materials. There has to be some chemicals used that arguably the defendants have to possess in order to use them to manufacture. So I don't think there's a theoretical possibility that you could completely separate the possession and the manufacture. How does that one act, then, of manufacturing methamphetamine, maybe it's not a lesser included, but how do we avoid this problem of one act violates two statutes at the same time? Yes. And I think as the case law points out, I think in looking at the factors, you decide was there really one agreement or were there two? Forget conspiracy. I'm just talking about manufacturing and possession. Right. So if the agents came upon the defendants in the middle of a methamphetamine lab and they were using the million pseudoephedrine pills to manufacture methamphetamine, I think there you would have an identity of facts so that there would not be two conspiracies. Then you would look at and say there's really one agreement. There's an identity of time and location, participants, and it's similar to the firearm. Forget agreements. Forget conspiracies. Suppose they come upon a guy cooking methamphetamine, stirring the pot, and on the shelf are the precursor chemicals. Could he be convicted of both manufacturing methamphetamine and possession of precursor chemicals with respect to manufacture? I see that there's two substantive counts. Yes. You know, I don't know, but standing here thinking of it, I think not. I think at some point the facts would indicate that the possession of the list of chemicals were completely wrapped up in the manufacture of the methamphetamine or their use in the manufacture of methamphetamine. I'd have to think about it in terms of the other. There are good cases, not on this, but using firearms, where with the possession of the firearm, you can only be convicted once for the possession of the single firearm, despite different ways of characterizing that firearm. I think that would be the closest analogy. So could you have, for example, a conspiracy to make an omelet and a separate conspiracy to crack an egg? Well, you could, depending on whether the cracking of the egg was part of making the omelet right there, or maybe you crack an egg and then you take the egg over to your neighbor's house, and then your neighbor and you decide to craft the omelet there. Again, I think it all comes back to analyzing the facts and whether there's just one set of events or whether we're really talking about different streams. And here, I think one of the key facts that interrupted the stream was that the defendants drove north, and when the agents recognized this was a ripoff, then they decided to take the whole investigation down because they couldn't control a million pseudo-veteran pills going off into northern California when they thought that they were headed south to Modesto, directly to a lab to manufacture. So when we look at the Guzman factors, you think what we should look at primarily is the factor relating to which element, then? It sounds like it's not the temporal element that you're concerned about. It's the location, because they headed off in a different direction than the way the direction you intended? I think the primary one is the statutes involved. Here, there are two different subsections charged with really different crimes. And then second is the locations, because they're going apart. Now, the government concedes that as to identity of participants, all we know, because we don't have an insider, all we know is these seven defendants were involved in each conspiracy. What should I make of the comment in the opinion on a direct appeal? The court described this as an appeal primarily relating to a conspiracy to purchase approximately 1 million pseudo-epinephrine pills to manufacture methamphetamine. It sounds like one conspiracy to me. Well, the court didn't look at that issue. And while we noted it in our brief, that's arguably not our strongest argument that the court of appeals didn't find two conspiracies, because the issue was never raised. Just the sufficiency of the evidence, right? Yes. That's what they were looking at. Yes. Can I just ask you a question? I'm sorry. No, not at all. Just if you're right, you're right, and so be it. But what are the practical implications if we were to say that there's only one conspiracy here, does it have any practical effect one way or the other? Well, the practical effect would be then it would go back to the district court and the district court would ultimately vacate count two. We have argued that there is no prejudice for purposes of Strickland, and I know Your Honor may disagree with that notion at the outset. But he's serving identical concurrent counts, right? Yes. So if one were just stricken off the books, he's still serving, what is it, 180 months? Same prison sentence. He would have one fewer. He would have three felony convictions out of this rather than four. I don't know what happens. If he can walk a little taller. But I mean, as a practical matter, he's not going anywhere or changing his sentence as far as we can tell. That's correct, Your Honor. And as we argued in the brief, the cases that have found prejudice have relied on cases that were not collateral attacks but were direct attacks under the Double Jeopardy Clause as opposed to collateral under the Sixth Amendment. Thank you. Thank you, Your Honor. Mr. Weigand, you've got about a minute. Just briefly, Your Honors. I'd like to address Judge Gould's comment about the eggs. My answer to that is, no, you can't, because you can't make an omelet without the eggs. So if, just like counsel for the government, in response to a question I think by you, Judge Silberman, if there's precursor chemicals on a shelf, can somebody be charged with the possession of the manufacturer and the possession of precursor chemicals? I believe counsel's answer was probably not. Likewise, in this particular case, the possession, the attempt to acquire the 1 million tabulus of pseudoephedrine is pretty obvious what these defendants intended to do with it. They were not going to distribute it to BART commuters during the flu season. They were going to manufacture, or at least their idea was to manufacture methamphetamine. So based upon the facts of the case, there really is one overarching, in my view, conspiracy. If we look at the case law, I just want to quickly contrast. For example, in Montgomery, where the Court did, this Court found that there were two separate conspiracies, there were clear differences in Montgomery. One conspiracy began, if I recall the case correctly, much earlier than the other conspiracy, number one. And there were not a lot of, like we have here, overlapping of the defendants as we have here. Second, we can sum up our ---- I see you're over your time, Mr. Weisman. I'm sorry? You're over your time. I'm sorry. Okay. Thank you. Thank you very much. Thank you. Shalva, thank you. Also, the case disargued is submitted. Good morning.
judges: Silverman, Gould, Christen